**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Steven Allen BOARDMAN, Defendant and Appellant.**

**No. 12152.**

Supreme Court of South Dakota.

Argued Jan. 13, 1978.

Decided April 6, 1978.

Peter H. Lieberman, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Ronald E. Brodowicz, Rapid City, for defendant and appellant.

WINANS, Retired Justice.*

The defendant in this case appeals from the judgment of conviction for first degree burglary. He was convicted by a jury in the Seventh Judicial Circuit and sentenced to nine years in the penitentiary. Error is alleged to have occurred in allowing the admission into evidence of fruits of a search of the vehicle in which the defendant was riding, the giving of an accessory instruction, the addition of a witness' name to the information at the time of trial and failure of the judge to excuse certain jurors for cause. We affirm.

At approximately 8:45 p. m. on January 11, 1976, the Piggly Wiggly store on East Saint Patrick Street in Rapid City was robbed. Two men wearing ski masks demanded money from the store manager at gunpoint. The robbers took cash, checks, a cash drawer and money deposit bag with them. The manager phoned the police immediately after the robbers left the store and gave a description of the robbers. At 8:50 p. m. the report of the robbery was broadcast on the police radio. Hearing the broadcast, Officer Chandler of the Rapid City Police Department drove his vehicle to an area east of the crime scene to cover what he believed to be a logical escape route.

At a point approximately two miles from the crime scene, the officer encountered a dirty, faded green pickup truck coming from the direction of the store. Officer Chandler observed that the driver of the car was a juvenile who had been in trouble with the law several times, including an arrest for grand larceny. The area being lightly traveled, the officer made a U-turn and

* In accordance with SDCL 16–1–5.

followed the pickup. He observed that there were three males in the truck in their late teens or early twenties, and that the individuals were acting very nervous and furtive after seeing that the police car was following them. Because of his concern that the individuals might be armed, Officer Chandler followed the truck for several miles while awaiting a backup unit to assist in making the stop. By the time the backup unit arrived and the truck was pulled over, the vehicles were over two miles beyond the city limits.

At the time the truck was stopped, the police had received the following information over the police radio: [1]

1. Armed robbery at the Piggly Wiggly;
2. Two males, one with a gun, both wearing stocking caps over their faces and blue jeans;
3. Unknown mode of travel; direction of travel possibly east;
4. Took money tray with them;
5. One about six feet, one about five feet eight inches, both having fairly slight builds;
6. One has dark colored, probably black boots on;
7. Took rust brown deposit bag containing cash and checks; took cash drawer with money in it.

In addition to this, Officer Chandler personally knew the driver of the vehicle as a person who had been in trouble with the law before. After stopping the truck, one of the other officers informed Officer Chandler that the other two occupants of the truck had previously been involved in a burglary.

On stopping the truck and ordering the occupants out, the police observed that all three were males wearing blue jeans, and two of them had black boots. Also, they fit the height descriptions and had slight builds. The suspects were pat-searched for weapons, and the truck was examined but nothing was found at that point. The sus-

pects were then informed that they were going to be returned to the scene of the crime for identification purposes. It is unclear at what point it was broadcast, but either before leaving for the Piggly Wiggly or on the way, the police radio carried a report that a gray, 1955 or 1956 Ford pickup had been observed being pushed east on Oakland Street by young people, and that some checks and the cash drawer had been found on Oakland Street. The suspects had first been observed by Officer Chandler a distance of less than one mile from the point where this truck had been seen being pushed.

At the scene of the crime, a lineup consisting of the three suspects and several people off the street was arranged, and the defendant was picked out by the employees of the grocery store, based on his build, height and clothing. A second search of the truck was then made and a large amount of change, mainly quarters, was found under the seat. An inspection of the bed of the pickup revealed more change and three keys, which the manager of the store identified as the keys to the cash register and deposit bag. The suspects were then formally placed under arrest and a more thorough search of their persons at the police station uncovered more evidence linking the suspects to the crime.

The defendant's first challenge is to the admission of the fruits of the search into evidence. He contends that the arrest was made at the time when the three suspects were first stopped and frisked, prior to being returned to the store for the lineup. At that time the arrest was not supported by sufficient probable cause and was made beyond the geographic jurisdiction of the police department, so the subsequent search was improper and the fruits of the search were not admissible according to the defendant.

The United States Supreme Court in *Terry v. Ohio*, 1968, 392 U.S. 1, 22, 88 S.Ct.

---

1. There is a discrepancy between the officer's version of the information he had when he made the stop and what the tape of the police radio transmissions indicates he knew. So for purposes of this opinion, we assume the facts as shown by the transcription of the police tape are accurate.

1868, 1880, 20 L.Ed.2d 889, 906, recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." The court required that in justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.

Admittedly, the officer was acting on a limited amount of information at the time he stopped the truck. However, we believe he had enough information to make an investigatory stop. At the time of the stop, the officer knew a robbery had been committed by two males, the vehicle containing the suspect was on one of the logical escape routes approximately five minutes after the crime, the police radio had given the direction of travel of the robbers as "possibly east," and he knew the driver of the vehicle as someone who had been in trouble with the police before.

The facts of this case are similar to a case in which an investigatory stop and the subsequent arrest and search and seizure were upheld by the U.S. Court of Appeals for the Eighth Circuit. In *Orricer v. Erickson*, 1973, 8 Cir., 471 F.2d 1204, police in Vermillion, South Dakota, observed that a grocery store appeared to have been the scene of an attempted nighttime burglary. Two suspects were observed in an alley behind the store but escaped. The Vermillion police undertook investigatory stops of all vehicles in the vicinity and eventually located the suspects. The court had this to say:

"Here, police officers sought to locate two suspects who had run from the scene of the crime. Although the suspects were last seen afoot, we think that it was reasonable for police to believe that the burglars might use a motor vehicle * *. Within one hour of the crime, police discovered only two vehicles, including the one driven by Orricer, and only one or two pedestrians in the general downtown area of Vermillion. Under the circumstances, we think the police acted reasonably in stopping individuals and autos within the vicinity of the crime for the purpose of requesting identification." *Orricer v. Erickson*, supra, at 1207.

In light of this, we believe the police were justified in stopping a vehicle driven by a person known to have been in trouble with the law and found on a logical escape route from the scene of the crime. See also *Carpenter v. Sigler*, 1969, 8 Cir., 419 F.2d 169. After the investigatory stop was made, further information was received which confirmed the suspicions of the officer and provided probable cause for arrest. As the U.S. Supreme Court said in a case subsequent to *Terry*:

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. [citation omitted] A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 1972, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612.

SDCL 23–22–7 allows a peace officer to make an arrest without a warrant "(3) [w]hen a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it." SDCL 23–22–8 allows an officer to make a warrantless arrest at night of any person whom he has reasonable cause for believing has committed a felony, and the arrest is justified even though it afterward appears that no felony had been committed. Assuming the arrest did occur at the point where the defendant was restrained and taken to the scene of the crime for identification, Officer Chandler knew at that point that all three suspects had been involved with violations of the law in the past and

that the two older ones had been connected with a prior burglary. He knew that the clothing and height descriptions given matched those of the suspects, and he knew that the vehicle containing the three had been observed by him on a logical escape route shortly after the burglary had occurred. This provided probable cause for the arrest. *Orricer v. Erickson*, supra; *Klingler v. United States*, 1969, 8 Cir., 409 F.2d 299, cert. den., 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110; *State v. Klingler*, 1969, 84 S.D. 466, 173 N.W.2d 275; *State v. Strickland*, 1973, 87 S.D. 522, 211 N.W.2d 575.

■ The authority of Officer Chandler to make an arrest outside the city limits of Rapid City is found in SDCL 23–22–39, which allows any peace officer of this state in fresh pursuit of a person who is reasonably believed by him to have committed a felony to arrest and hold such person in custody. SDCL 23–22–38 states that "fresh pursuit" does not necessarily imply instant pursuit, but pursuit without unreasonable delay. The officer had reasonable cause to follow the suspects and was justified in not wanting to attempt to stop the three on a lightly traveled road, suspecting that at least one of them was armed. He followed the vehicle while awaiting the backup unit and gathered further information as it became available about the robbery. He was in sufficient "fresh pursuit" to come within the ambit of SDCL 23–22–39.

■ Having concluded that the stop and arrest, even if they occurred at the time that defendant contends they did, were supported by sufficient probable cause, we also conclude that the warrantless search was justifiable as a search incident to a lawful arrest. *State v. McCreary*, 1966, 82 S.D. 111, 142 N.W.2d 240; *State v. Thunder Horse*, 1970, 85 S.D. 76, 177 N.W.2d 19.

The search and seizure was also justified under the doctrine set down by the U.S. Supreme Court in *Carroll v. United States*, 1925, 267 U.S. 132, 159, 45 S.Ct. 280, 287, 69 L.Ed. 543, 554, and *Chambers v. Maroney*, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. The Court of Appeals in *Orricer*, supra, summarized the doctrine this way:

"Assuming, arguendo, that no arrest was made at the scene of this initial apprehension, we think that the search and seizure were justified, even if they were not made incident to an arrest, because the seizing officer possessed reasonable cause to believe that the contents of the automobile 'offend against the law.' * * Police officers having probable cause to believe an automobile which they have stopped contains contraband or evidence of a crime may search the vehicle without a warrant." 471 F.2d at 1207.

■ At the time the search was conducted, which revealed the evidence now sought to be suppressed, the defendant had been picked from a lineup, a vehicle matching the one in which the defendant was found had been connected with the burglary, all three suspects were known to have been in trouble with the law before, and their descriptions matched those given of the burglars. This provided probable cause to believe that the vehicle contained evidence of a crime. *State v. Catlette*, 1974, S.D., 221 N.W.2d 25; *Thunder Horse v. State of South Dakota*, 1972, 8 Cir., 456 F.2d 1262; *United States v. Bozada*, 1973, 8 Cir., 473 F.2d 389.

■ The second point raised by the defendant is a challenge of the trial court's decision to allow the state to argue alternative theories to the jury by presenting accomplice testimony that the defendant was a principal and also giving an accessory instruction to the jury. SDCL 23–10–3 abrogates the distinction between a principal and an accessory to the commission of a crime and goes on to state that:

"all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid and abet in its commission, though not present, must be prosecuted, tried, and punished as principals."

This provision was relied upon by this court in *State v. Zemina*, 1973, 87 S.D. 291, 206

N.W.2d 819[2] in holding that it was not error for the prosecution to present alternate theories of guilt to the jury, and for the reasons given there, we conclude it was not error in this case.

■ The defendant alternatively argues that his motion for special verdict forms should have been allowed, so it would be known whether the jury found the defendant guilty as a principal or as an aider and abetter. In view of the abrogation of the distinction between principal and accessory and our decision in *Zemina*, supra, it is irrelevant whether the jury convicted the defendant under one theory or the other. In addition the record clearly reflects that defense counsel's reason for requesting special verdict forms was to determine whether the defendant would also be found guilty of a violation of SDCL 23–7–22, which provides an additional penalty for use of a dangerous weapon in commission of a felony. Since the second count charging the defendant with a violation of SDCL 23–7–22 was dropped, and since that was the sole reason for the request for special verdict forms, the trial court's denial was not reversible error.

■ The granting of the prosecution's motion to endorse on the information the name of one of the defendant's alleged accomplices on the day of the trial is raised as error. The record indicates that counsel for the defendant had been informed several days before trial that an accomplice might testify, and counsel for the defendant had a copy of the accomplice's statement to the police since the preliminary hearing. This court has set down the following rule governing endorsement of names of witnesses on an information:

"The endorsement of the names of witnesses upon an information at the trial is largely within the discretion of the trial court, and in the absence of some showing of abuse or some bad faith on the part of the state's attorney in purposely withholding the name of such witness until such time, resulting in substantial prejudice to the accused, the order of the court permitting the endorsement of such names will not constitute grounds for reversal." *State v. Rober*, 1972, 86 S.D. 442, 445, 197 N.W.2d 707, 709.

There was no showing that the state's attorney deliberately withheld the name of the accomplice from defense counsel. Although it is a disputed issue as to when defense counsel was actually informed that the accomplice would take the stand, both attorneys agree that they had been discussing the matter in the week prior to trial, so defense counsel was not totally surprised on the day of trial. Under these circumstances we conclude that the trial court did not abuse its discretion. See also *State v. Poppenga*, 1957, 76 S.D. 592, 83 N.W.2d 518.

■ Finally, the defendant argues that the court erred in failing to grant a motion to excuse some of the prospective jurors for cause. This court has ruled that the trial court has broad discretion in dealing with challenges of jurors for cause. The general rule is that, when the evidence of each juror is contradictory and subject to more than one construction, a finding by the trial court either way upon the challenge is conclusive on appeal. *State v. Flack*, 1958, 77 S.D. 176, 89 N.W.2d 30. In the present case the statements of each challenged juror were contradictory and subject to more than one interpretation, so the rulings of the trial court were within its discretion.

Affirmed.

DUNN, C. J., and WOLLMAN and MORGAN, JJ., concur.

PORTER, J., concurs specially.

WINANS, Retired J., sitting for ZASTROW, J., disqualified.

PORTER, Justice (concurring specially).

I concur in the result of the opinion, but for reasons different from those given by the majority.

2. We note that part of the *Zemina* decision has been found to be erroneous by Federal District Court Judge Nichol, but the part of the decision dealing with the aiding and abetting instruction was found not to be erroneous. *Zemina v. Solem*, 1977, D.C.S.D., 438 F.Supp. 455, 467.

Based upon *Orricer v. Erickson*, 471 F.2d 1204 (8th Cir. 1973), I conclude that the initial stop of the vehicle in this case was not an unreasonable intrusion. The officer knew a robbery had been committed by two males. The truck was stopped approximately five minutes after the robbery at a point in close proximity to the location of the crime. It was close to 9:00 in the evening and the traffic in the area was extremely light. Although *Orricer, supra,* involved a stop in the early morning hours, the investigatory stop did not take place until an hour after the discovery of the burglary. The time span between the discovery of the crime and the stop in the present case was much shorter. In *Orricer, supra,* the court stated, "Under the circumstances, we think the police acted reasonably in stopping individuals and autos within in the vicinity of the crime for the purpose of requesting identification." *Id.* at 1207. I reach the same conclusion based upon my above discussion in this case.

I do not reach the question of whether an arrest occurred at the location of the initial stop; even if an arrest occurred, it was invalid because at that point Officer Chandler did not have probable cause to make an arrest. Although the clothing and height descriptions matched those of the suspects, they were dressed in blue jeans, common attire for the area, and were of common height, six feet and five feet eight inches tall. They were stopped on a street which the majority labeled a logical escape route, but any road in the vicinity could be labeled an escape route, barring any precise definition for the phrase. Officer Chandler testified that he knew that all three suspects had been involved with violations of the law in the past, and two of them had been connected with a prior burglary. Although I think it is questionable whether an officer can consider such knowledge of previous criminal involvement as a basis for probable cause to arrest, particularly in cases where there is very little additional evidence linking a suspect to a particular crime, I will not pass on the propriety of this final consideration in this case, because even with that knowledge I conclude that the officer did not have probable cause to make an arrest at the location of the initial stop. Therefore, at the time the suspects were returned to the scene of the crime for identification purposes, they had not been validly arrested.

While the subsequent search of the truck at the scene of the crime was not a search incident to arrest, it was conducted under conditions presenting probable cause and exigent circumstances. *See State v. Catlette*, S.D., 221 N.W.2d 25 (1974). A lineup had been conducted and the defendant was identified by the employees of the grocery store. This identification, coupled with the information known at the time of the initial stop, and the connection of a pickup, fitting a description similar to the one stopped, to the scene where some checks and a cash drawer had been found, constituted probable cause to conduct a warrantless search of the vehicle at that point. All of this information, together with the change and keys to the cash register and deposit bag found during the search of the truck, constituted probable cause for the subsequent formal arrest of the defendant at the scene of the crime.

I concur in the remaining portions of the majority opinion and conclude that the conviction of the defendant should be affirmed.