#25650-a-PER CURIAM

**2011 S.D. 10**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                        Plaintiff and Appellee,

    v.

ROBERT THOMAS JOHNSON,                        Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE LAWRENCE E. LONG
Judge

* * * *

MARTY J. JACKLEY
Attorney General

FRANK GEAGHAN
Assistant Attorney General                        Attorneys for plaintiff
Pierre, South Dakota                                 and appellee.

RYAN KOLBECK of
Minneahaha County Public
   Defender's Office                                Attorneys for defendant
Sioux Falls, South Dakota                          and appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 16, 2011

OPINION FILED  **03/23/11**

#25650

PER CURIAM

[¶1.] Robert Thomas Johnson (Johnson) appeals his conviction for first degree robbery. Johnson was convicted of robbing a Sioux Falls casino. Johnson argues that the evidence obtained from the search of his vehicle should have been suppressed because the arresting officer did not have reasonable suspicion to initiate the traffic stop. The trial court denied Johnson's motion to suppress. Because the initial stop of Johnson's vehicle was based on specific, articulable facts that reasonably supported the initial detention, we affirm.

FACTS

[¶2.] In the early morning hours of July 31, 2009, Deuces Casino in Sioux Falls was robbed. An emergency dispatch alerted Sioux Falls Police of a holdup alarm at Deuces Casino. Within seconds two witnesses called the police reporting the robbery. The witnesses informed the police that the suspect left the casino on foot running east. Both callers indicated the robber brandished a handgun during the robbery.

[¶3.] While on patrol Officer Trainor (Trainor) received the emergency dispatch regarding the robbery. Trainor activated his in-car camera and drove towards the casino. After traveling approximately one block, Trainor received the information provided by the witnesses. Trainor maneuvered to a position where he could observe traffic moving north across 37th Street, away from the casino. Trainor stopped the only northbound vehicle that crossed 37th Street in the few moments after the robbery. Johnson's brother drove the vehicle, with Johnson in the passenger seat. After briefly talking with Johnson, Trainor determined he had

probable cause for an arrest, and called back-up. A search of the vehicle revealed a bag of money and a pellet gun.

[¶4.] Johnson moved to suppress the evidence obtained from the initial stop. Based on the testimony of Trainor at the suppression hearing, the trial court found the traffic stop supported by "reasonable suspicion" based on the facts known to Trainor at the time of the stop. * After Johnson's suppression motion was denied,

---

* The trial court reached an alternative but erroneous conclusion after the suppression hearing. While watching the videotape from Trainor's patrol car, the court noticed that one of the brake lights on the vehicle was not functioning. When questioned, Trainor admitted he did not observe the non-functioning brake light before initiating the stop, but only upon watching the videotape. The trial court determined that the non-functioning brake light was an alternative basis for the stop.

In its memorandum decision on the motion to suppress, the trial court determined that the non-functioning brake light was "'observable to the law enforcement officer at the time of the [stop]' and thus would 'entitle an officer of reasonable caution to believe that the action taken . . .' namely the stop, was justified." (quoting *State v. Vento,* 1999 S.D. 158, ¶ 8, 604 N.W.2d 468, 470.) The court also found that Trainor did not observe the non-functioning brake light at the time of the stop.

If the court concluded there was probable cause to stop the vehicle, it is true that "a traffic violation, however minor, creates sufficient cause to stop the driver of a vehicle." *State v. Chavez,* 2003 S.D. 93, ¶ 16, 668 N.W.2d 89, 95. But "probable cause must be based on the facts **'known' to the officer at the time** of the search." *Id.* ¶ 53 (Konenkamp, J., concurring) (emphasis added).

If the court concluded that articulable suspicion justified the *Terry* stop, it is axiomatic that an officer's articulable or reasonable suspicion is evaluated based on "objective facts." *Brown v. Texas,* 443 U.S. 47, 51, 99 S. Ct. 2637, 2640, 61 L. Ed. 2d 357 (1979). But that does not necessarily mean that objective facts justify intrusion when unknown to the officer at the time of the intrusion. To divorce the officer's subjective knowledge from the reasonable suspicion equation would be to allow police intrusion without "specific articulable facts" supporting the intrusion. *See, e.g., State v. Satter,* 2009 S.D. 35, ¶ 6, 766 N.W.2d 153, 155 ("it is enough that the stop is based upon specific and articulable facts[.]"). To uphold a stop when an officer cannot cite

(continued . . .)

Johnson was convicted of first degree robbery at a court trial. Johnson appeals, raising only the issue of the validity of the initial traffic stop.

ANALYSIS AND DECISION

[¶5.] "'[A]s a general matter determinations of reasonable suspicion . . . are reviewed *de novo* on appeal,' [but] a reviewing court 'should take care . . . to give due weight to inferences drawn from [historical] facts by resident judges and local law enforcement officers.'" *State v. Quartier*, 2008 S.D. 62, ¶ 18, 753 N.W.2d 885, 889-90 (quoting *Ornelas v. United States,* 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996)). "Whether a Fourth Amendment violation occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting [the officer] at the time[.]'" *State v. Chavez*, 2003 S.D. 93, ¶ 48, 668 N.W.2d 89, 96 (Konenkamp, J., concurring).

[¶6.] "The Fourth Amendment of the United States Constitution is implicated when a vehicle is stopped. The action constitutes a seizure even though the purpose of the stop is limited and the detention is brief." *State v. Krebs,* 504 N.W.2d 580, 584 (S.D. 1993) (citation omitted). "A passenger has standing to challenge the stop of a vehicle because a stop is a seizure of all persons in the vehicle." *Id.*

[¶7.] "The factual basis needed to support a traffic stop is *minimal*." *State v. Satter,* 2009 S.D. 35, ¶ 6, 766 N.W.2d 155. "[W]hile a stop may not be the 'product

_____

( . . . continued)
"specific articulable facts" by definition means that the stop was based on "mere whim, caprice, or idle curiosity." *See id.*

of mere whim, caprice or idle curiosity, it is enough that the stop is based upon "specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant [the] intrusion."" *State v. Wright*, 2010 S.D. 91, ¶ 11, 791 N.W.2d 791, 795 (citations omitted).

[¶8.] Because the reasonable suspicion determination requires this Court to "look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing," a review of the salient facts known to Trainor is necessary. *State v. Herren,* 2010 S.D. 101, ¶ 7, 792 N.W.2d 551, 554 (quoting *United States v. Arvizu,* 534 U.S. 266, 273-74, 122 S. Ct. 744, 750-51, 151 L. Ed. 2d 740 (2002)). The facts come from the trial court's findings of facts and conclusions of law. Johnson does not take issue with the findings themselves, but argues that the facts do not support a finding of reasonable suspicion.

[¶9.] At the time Trainor received the initial emergency dispatch he was patrolling in southwest Sioux Falls. Within seconds, Trainor received another call indicating a handgun had been used and the robber fled east on foot. Given Trainor's experience with between forty to fifty robberies, Trainor believed the suspect likely had a vehicle waiting nearby. Additionally, Trainor believed the suspect likely to head north through a residential area, rather than attempting to cross busy 41st Street.

[¶10.] Trainor maneuvered to position himself north of Deuces Casino in order to observe vehicles moving away from the casino in this direction. While driving toward his observation point, Trainor observed two vehicles headed east, in

the direction of the casino. Trainor did not consider those vehicles suspicious as their direction would have necessitated driving several blocks around the casino, a maneuver Trainor did not believe could be accomplished in the time since the robbery.

[¶11.]    As he reached his observation point, Trainor observed Johnson's vehicle. Trainor knew the casino had been robbed moments before. His experience taught him Johnson's vehicle was on a logical escape route. He knew the robber was likely to have entered a vehicle. No other vehicles were driving away from the casino at that time of night. When observed by Trainor, Johnson's vehicle was approximately four blocks away from the casino, which corresponded to the distance a suspect was likely to travel in the elapsed time since the robbery. Because of these facts and inferences drawn from the facts, Trainor suspected that the vehicle traveling away from the casino may carry the suspect. Trainor initiated the traffic stop approximately two minutes after receiving the emergency dispatch regarding the robbery.

[¶12.]    Johnson argues that the facts recited above do not justify the initial stop of the vehicle. Johnson oversimplifies the facts available to Trainor at the time of the stop. First, Johnson argues that a stop based upon the location of the vehicle alone violates the Fourth Amendment. While this may be true, the location of the vehicle cannot be considered in a vacuum. The authority cited by Johnson involves an initial seizure based solely on the fact that the defendant was stopped in an area with "a high incidence of drug traffic." *Brown v. Texas,* 443 U.S. 47, 49, 99 S. Ct. 2637, 2639, 61 L. Ed. 2d 357 (1979). Had Trainor known nothing more than the

location of Johnson's vehicle, the stop likely would have violated the Fourth Amendment.

[¶13.] But Trainor also knew that a casino had been robbed seconds ago, that there were no other vehicles moving away from the casino at this time of night, and that the location of the vehicle was on a logical escape route. In *Brown,* the detaining officers were not aware of any specific criminal activity they planned to investigate. *Id.* at 49.

[¶14.] Johnson also argues that Trainor did not have an accurate description of Johnson, nor did he personally observe Johnson before making the stop. In *State v. Faulks*, this Court upheld a stop even though the defendant did not precisely match the description provided to the police. 2001 S.D. 115, ¶ 11, 633 N.W.2d 613, 617. But a physical description was provided to the police. *Id.* ¶ 2. Johnson argues *Faulks* stands for the proposition that without any sort of physical description of the suspect, Trainor could not have had reasonable suspicion to initiate the stop. While Trainor did not have a physical description of the suspect, he had the benefit of being on an escape route within moments of the robbery, and observing the only vehicle moving away from the scene of the crime. *Faulks* does not require a physical description of a suspect in order for reasonable suspicion to exist.

[¶15.] The Eighth Circuit has upheld a stop in a similar situation.

> Here, police officers sought to locate two suspects who had run from the scene of the crime. Although the suspects were last seen afoot, we think that it was reasonable for police to believe that the burglars might use a motor vehicle . . . . Within one hour of the crime, police discovered only two vehicles, including the one driven by [defendant], and only one or two pedestrians in the general downtown area of Vermillion. Under the circumstances, we think the police acted reasonably in stopping

> individuals and autos within the vicinity of the crime for the purpose of requesting identification.

*Orricer v. Erickson,* 471 F.2d 1204, 1207 (8th Cir. 1973).

[¶16.]     This Court upheld an investigatory stop when officers who knew of a recent burglary stopped a vehicle on a logical escape route. *State v. Boardman,* 264 N.W.2d 503, 506 (S.D. 1978). The officers knew that the burglary had been committed by two males, but the vehicle contained three males. *Id.* Also, the officers were aware that one of the males in the vehicle had prior run-ins with law enforcement. *Id.* In *Boardman*, the officer specifically watched an escape route over two miles from the robbed Piggly Wiggly. *Id.* Affirming admittance of the evidence this Court quoted the United States Supreme Court:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity and maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Id.* (quoting *Adams v. Williams,* 407 U.S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972)).

[¶17.]     The facts known to Trainor at the time, and logical inferences arising from those facts, support a finding of reasonable suspicion to make the stop. This stop was "not the product of mere whim, caprice, or idle curiosity." Denial of the motion to suppress is affirmed.

[¶18.]     Affirmed.

#25650

[¶19.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, MEIERHENRY, and SEVERSON, Justices, participating.