STATE of South Dakota, Plaintiff
and Respondent,

v.

Mark A. POWLESS, Philip Bautista and
James Fredrick War Bonnet,
Defendants and Appellants.

STATE of South Dakota, Plaintiff
and Respondent,

v.

Herbert G. POWLESS, Defendant
and Appellant.

Nos. 12043 and 12071.

Supreme Court of South Dakota.

Argued Feb. 13, 1978.

Decided April 20, 1978.

Rehearing Denied May 24, 1978.

John P. Guhin, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., and Harry W. Christianson, Asst. Atty. Gen., Pierre, on brief.

John T. Elston, Hot Springs, Christopher D. Stanley, Cleveland, Ohio, for defendants

and appellants, Philip Bautista, Mark Powless and James Fredrick War Bonnet.

Russell D. Kading, Sioux Falls, Dennis P. Coffey of Coffey & Coffey, Milwaukee, Wis., for defendant and appellant, Herbert G. Powless.

WINANS, Retired Justice.*

All four defendants were convicted of violating SDCL 22–14A–14, possession of explosives by a felon, by a judge of the Seventh Judicial Circuit in a trial to the court. They raise questions as to the sufficiency of the evidence, the legality of the search and seizure, denial of their right to a speedy trial and lack of jurisdiction. We affirm the convictions.

On March 1, 1975, about 1:40 p. m., State Trooper Van Orman received a state police radio broadcast advising that an individual by the name of War Bonnet had purchased a quantity of .357 magnum ammunition in Rapid City, that he had entered a bronze or copper colored van without license plates and was believed to be armed with an AR 15 rifle. The van was believed to be headed south on Highway 16, and the broadcast indicated that anyone stopping the vehicle should be careful because the occupants were armed. The police were aware that an outstanding warrant for Joseph War Bonnet existed and had been informed several days earlier by teletype from the Iowa Bureau of Criminal Investigation that James War Bonnet was driving a stolen green van and had in his possession a number of rifles, submachine guns and rocket launchers. The police radio broadcast specifically mentioned this teletype and referred to James War Bonnet as "the guy with all the guns and stuff in the van * * *."

Shortly after the first broadcast a subsequent broadcast advised that the van might be heading south on Highway 79. Trooper Van Orman, accompanied by a deputy sheriff, proceeded to Highway 79 and there observed a south bound, copper colored van without license plates as it passed him. Trooper Van Orman informed the state police of his sighting and arranged for a roadblock at a bridge near Maverick Junction.

The van was stopped at the roadblock and the seven Indian occupants stepped out of the van as directed. The driver was James War Bonnet, who admitted that Joseph War Bonnet was his brother, but Joseph was not one of the people in the van. Each occupant of the van was pat-searched. Herb Powless produced title papers showing that the van was owned by the American Indian Council on Alcoholism, Milwaukee, Wisconsin, but none of the occupants identified themselves as members of that organization at the time of the stop and search. It later was revealed that Herbert Powless was the council's director.

For the purpose of running a National Crime Information Center check on the van, Trooper Van Orman went to the van to obtain its serial number, which he found on the back portion of the left door panel about two and one-half feet above the ground. While stooping over looking at the number, Trooper Van Orman observed what appeared to be the butt of a rifle under a blanket in the rear of the van. At trial, his testimony was unclear because he stated that he inadvertently observed the gun butt; however, at the suppression hearing, he stated that he had been informed that the defendants were armed and dangerous, so he was looking for weapons in the van when he spotted the gun butt. He took the keys from the ignition and opened the van's back door and discovered three loaded rifles under a blanket along with several briefcases. At this point the occupants were placed under arrest for possession of machine guns. As the van was being prepared for return to Hot Springs, the police opened one of the briefcases and found some fuses and fuse lighters. The rest of the briefcases were opened at a later date after a search warrant had been obtained in Hot Springs and sixty sticks of dynamite, along with blasting caps and other demolition equipment, were found.

* In accordance with SDCL 16–1–5

A preliminary hearing was held on March 14, 1975, and the defendants were bound over on four counts: (1) Possession of substances with intent to make a destructive device—SDCL 22–14A–15; (2) Possession of explosives with intent to injure person or property—SDCL 22–14A–6; (3) Transportation of a destructive device in violation of SDCL 22–14A–7; and (4) Possession of explosives by a felon in violation of SDCL 22–14A–14. A suppression hearing was held in front of a circuit court judge and the motion to suppress was denied. The trial of these four defendants was held before a different judge on March 29, 1976, and the third count was dismissed before trial. The first and second counts were dismissed after presentation of the state's case. The defendants offered no evidence and all were convicted of possession of explosives by a felon.

■ The first issue raised deals with the legality of the search and seizure. It is conceded that the police had a right to make an investigatory stop of the van because of the absence of license plates. This stop revealed that the van had a temporary Wisconsin plate in the front window and was registered to the American Indian Council on Alcoholism, but at that time none of the occupants informed the police that he was connected with that organization. This fact plus the information given over the police radio justified Trooper Van Orman's action in obtaining the serial number of the van, especially in light of the fact the teletype received several days prior to this incident indicated that War Bonnet was driving a van stolen in Kesheina, Wisconsin. *United States v. Powless,* 1977, 8 Cir., 546 F.2d 792; *United States v. Pearson,* 1971, 5 Cir., 448 F.2d 1207; *United States v. Powers,* 4 Cir., 1971, 439 F.2d 373; *United States v. Squires,* 1972, 2 Cir., 456 F.2d 967.

■ The United States Court of Appeals for the Eighth Circuit has examined the search of this van and concluded that the search and seizure of the weapons was justifiable as a "plain view" discovery during the course of the examination of the van for a serial number. *United States v. Powless,* supra. It concluded that Trooper Van Orman's viewing of the gun butt was inadvertent, which this court has held is a prerequisite to application of the plain view doctrine. *State v. Watkins,* 1975, S.D., 237 N.W.2d 14, 17. The testimony of Trooper Van Orman at the suppression hearing, however, indicates that his viewing of the gun butt was not inadvertent and was a result of a deliberate search by the trooper for weapons. In light of this we cannot accept the "plain view" doctrine as a basis for upholding the search and seizure.

However, the search and seizure of the guns can be justified, under the doctrine set down by the United States Supreme Court in *Carroll v. United States,* 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 and reaffirmed in *Chambers v. Maroney,* 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. This doctrine allows a search of motor vehicles without a warrant where the seizing officer has probable cause for belief that the contents of the vehicle "offend against the law." The court set down four circumstances which render a search warrant unnecessary: (1) "the car is movable," (2) "the occupants are alerted," (3) "the car's contents may never be found again if a warrant must be obtained," and (4) probable cause exists for a search of the automobile stopped on the highway. 399 U.S. 51, 90 S.Ct. 1981, 26 L.Ed.2d 428. The first three factors were certainly present in this case and for the reasons given below, we conclude that probable cause for the search also existed.

Trooper Van Orman testified that the reasons for his extreme caution in stopping the van were:

"Well, the information that I had led me to believe that the subjects were armed and dangerous and with incidents that have happened in the past, going back to 1973 when the agents were fired on from the back doors of a van, the doors were kicked open and Federal agents were fired upon, the information that· James War Bonnet was in a van with a sub-machine gun, there had also been an ex-

change of gun fire in the Pine Ridge area just a few days previously—."

In addition, he testified that he knew of the teletype concerning James War Bonnet and a van containing illegal weapons such as rocket launchers, but admitted that he did not remember all the specific details of the teletype. He was certainly justified in relying on the police radio bulletin, *United States v. Cage,* 1974, 10 Cir., 494 F.2d 740; see also *Whitely v. Warden of Wyoming State Penitentiary,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306. The record is clear that the police radio broadcaster was also aware of the teletype message concerning James War Bonnet and that his broadcasts to the police cars specifically referred to the teletype which had come into the office several days before this incident. In light of all this we conclude that Trooper Van Orman had sufficient probable cause to believe the van contained material that "offended against the law." *Orricer v. Erickson,* 1973, 8 Cir., 471 F.2d 1204; *State v. Boardman,* 1978, S.D., 264 N.W.2d 503, (handed down April 6, 1978). As a result the search and seizure of the guns in the van was legal.

■ These defendants were not convicted on any charge dealing with the firearms however, so it becomes necessary to determine whether the search of the briefcases which revealed the dynamite and blasting equipment was valid. Deputy Sheriff Jenniges testified that he was knowledgeable about guns because of his experience in the National Guard and that the AR 15 rifle which was found in the van was very similar in appearance to the M16, an automatic weapon used by the military. He also testified that the AR 15 can be easily converted to an automatic weapon. The arrest of the defendants for possession of machine guns in violation of SDCL 23–7–34, therefore, was supported by probable cause and the search of the briefcases was a legitimate search incident to arrest. *State v. McCreary,* 1966, 82 S.D. 111, 142 N.W.2d 240; *State v. Thunder Horse,* 1970, 85 S.D. 76, 177 N.W.2d 19; *State v. Boardman,* supra.

■ The defendants next challenge the sufficiency of the evidence to sustain their convictions. Their challenge relates to evidence of knowing possession of the explosives and evidence of their identities as it relates to prior felony convictions. We will first deal with the knowing possession issue.

Two women who were in the van when it was stopped testified at trial that the four defendants had spent at least two days together in the van, that they shared the driving during this time, and that at one point when they were being followed by a car, the three non-driving defendants each took a gun and were prepared to return gunfire if the tribal police were following them and fired on them first. Further testimony was given to show that the four defendants were looking for more weapons at a gun show and a pawn shop. The guns which the defendants reached for were located immediately on top of the briefcases. These circumstances are sufficient to show that the defendants were acting in concert and are sufficient to support a conviction for possession of explosives. *State v. Larkin,* 1972, 87 S.D. 61, 202 N.W.2d 862; *Patterson v. State,* 1965, Okl.Cr., 403 P.2d 515. See also, *State v. Jahnz,* 1978, S.D., 261 N.W.2d 426.

■ The defendants challenge the procedure by which their prior felony convictions were placed into evidence. The procedure complied with the requisites set out in the annotation at 28 A.L.R.2d 1140–1141 and was sufficient to allow the trier of fact to determine that the fingerprints of the prior felons and those of the defendants were the same. *Block v. State,* 1968, 41 Wis.2d 205, 163 N.W.2d 196; see also the annotation at 11 A.L.R.2d 870.

A further challenge to the evidence insofar as it relates to prior felony convictions is raised by defendants Herbert and Mark Powless. They contend that the evidence is unclear whether their prior convictions were for misdemeanors or felonies. Mark Powless contends that the sentence received in California and the failure of the California court to require a presentence investigation proves that his conviction was for a

misdemeanor. The record contains an extensive document signed in several places by Mark Powless wherein he pleads guilty and agrees to a plea bargain. He admits to commission of a felony, agrees to a sentence of two years with the sentence suspended and agrees to spend sixty days in the county jail as a condition of probation. The document further indicates that he specifically waived his right to a presentence investigation, so his contention here is without merit. As to Herbert Powless, the certified copy of the judgment of conviction for attempted aggravated battery in Wisconsin recites that he was found guilty of that crime, but cites W.S.A. 944.22 and 939.-32. W.S.A. 939.32 is the attempt statute, but W.S.A. 944.22 deals with misdemeanor possession of lewd, obscene or indecent material. W.S.A. 940.22 sets out the crime of aggravated battery, which is a felony. It is clear, therefore, that the misciting of the Wisconsin statute was a typographical error. The prior conviction of a felony is an element of the crime of which the defendant was convicted, and it must be proven beyond a reasonable doubt. We conclude that the certified copy of conviction presented a question for the trier of fact and provided sufficient evidence on which a conclusion that Herbert Powless had been convicted of a felony could be based. *State v. Sweazea,* 1970, Mo., 460 S.W.2d 614; *State v. Cippola,* 1969, 202 Kan. 624, 451 P.2d 199; *State v. McGonigle,* 1968, 103 Ariz. 267, 440 P.2d 100.

The defendants next allege a violation of their constitutional and statutory right to a speedy trial. The delay in this case was a little over one year. The record indicates that the defendants made no assertion of this right until the time of pretrial motions and shows no prejudice to the defendants. The main reason for the delay was the lengthy suppression hearing and briefing schedule on the question of suppression of the evidence. In light of this we conclude that the defendants' constitutional right to a speedy trial was not violated. *State v. Violett,* 1961, 79 S.D. 292, 111 N.W.2d 598. The record further shows that they were tried in the "second term after the one at which the * * * information is filed," as required by SDCL 23-34-2.

Finally, the defendants claim that the circuit court lacked jurisdiction because Fall River County is still part of the Great Sioux Reservation as set out in the Treaty of 1868, 15 Stat. 635. This argument ignores the Treaty of 1877, 19 Stat. 254, Article 1 which sets out the northern and western boundaries of the Great Sioux Reservation in terms that exclude what is presently Fall River County.

The convictions are affirmed.

All the Justices concur.

WINANS, Retired J., sitting for ZASTROW, J., disqualified.