UNITED STATES of America, Appellee,

v.

Derwin Hirah BAILEY, Appellant.

No. 76–1227.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 17, 1976.

Decided Dec. 29, 1976.

Peter J. Thompson, Minneapolis, Minn., for appellant.

John M. Lee, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Robert G. Renner, U. S. Atty., John M. Lee, Asst. U. S. Atty., and Gordon P. Erspamer, Intern, Richard Fellows, Intern, Minneapolis, Minn., on brief.

Before BRIGHT and WEBSTER, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

BRIGHT, Circuit Judge.

Appellant-Derwin Bailey was convicted in the District Court for the District of Minnesota, after trial to the court (Alsop, J.), of impersonating a creditor of the United States, in violation of 18 U.S.C. § 914, and of unlawful possession of stolen mail, in violation of 18 U.S.C. § 1708. The district court sentenced Bailey to two concurrent three-year prison terms to run consecutively with a state prison term to which Bailey had previously been sentenced. Bailey appeals, contending that: (1) the police obtained a United States treasury check from his automobile in an unlawful search, and (2) that the district court committed error in imposing a three-year prison sentence upon Bailey by relying upon a presentence report which included information relating to Bailey's prior arrest record. We reject Bailey's contentions, and affirm the conviction and sentence.

The pertinent record discloses the following factual background, largely undisputed. About 3:30 p. m. on the afternoon of May 24, 1975, Delbert Stevens, a Richfield, Minnesota police officer assigned to the juvenile office, was engaged in making "tavern checks," looking for minors who might be violating Minnesota's underage drinking laws. He also was on the lookout for robbers and short-change artists who had been reported as operating in the area. While sitting in his unmarked squad car, Stevens noticed a young, black male (later identified as Bailey) leave a car containing two other young people and enter the Belt Line Bar in Richfield. All three individuals appeared to Stevens to be underage. After two or three minutes, Stevens saw Bailey leave the bar and return to the car at a fast pace. Bailey jumped into the driver's seat, backed the car a half block down the street and through a controlled intersection, a violation of a Richfield city ordinance, and turned onto another street.

Stevens, suspicious because the youthful-looking Bailey had come out of the bar in such a hurry, followed Bailey's car and called the police radio dispatcher to request that the Belt Line Bar be contacted to determine whether there had been any trouble with a young, black male who had just left the bar. After telephoning the Belt Line, the dispatcher radioed Stevens that a very nervous, young, black male had entered the Belt Line and tried to cash a $100 federal tax rebate check. The young man reportedly had been insistent on cashing the check, and had offered to buy a large amount of beer with the check, but the barmaid at the Belt Line refused to cash it.

By this time, Bailey had driven onto an interstate highway with Stevens still following. Stevens decided to stop Bailey's car and make further inquiry. Since his own car was unmarked, Stevens radioed a request for a marked squad car to make the stop. Edward Gabrysh, the driver of a marked Richfield police car, after being advised by radio of the relevant facts, proceeded to stop Bailey's car. Stevens, who was still following close behind, also stopped his car and joined Officer Gabrysh. Gabrysh asked to see Bailey's driver's license. Bailey got out of the car and walked around to the passenger's side and stood on the shoulder of the road, where Gabrysh examined Bailey's license. Gabrysh handed Bailey's license to Stevens and moved towards Bailey's car. Gabrysh then saw a young man sitting on the right front seat suddenly bend down and attempt to put a brown window envelope under the dashboard of the car. Gabrysh recognized

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

the window envelope as the type used to mail United States Treasury checks. Gabrysh requested the passengers to get out of the car and, after they did so, Gabrysh retrieved a brown window envelope from under the dashboard. The envelope contained a federal tax rebate check dated May 23, 1975, payable to one Gregory Robert Buckle.

Bailey was taken to the police station where he signed a statement indicating that he understood his *Miranda* rights, but Bailey refused to sign the portion of that form acknowledging a waiver of his rights. Bailey declined to make a written statement, but did make an oral statement asserting that he had attempted to cash the check for a friend.

## I. *Seizure of the Check.*

█ It is clear that the fourth amendment forbids a police officer from stopping a car for investigative purposes unless the officer can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). *See also Orricer v. Erickson*, 471 F.2d 1204 (8th Cir. 1973); *Carpenter v. Sigler*, 419 F.2d 169 (8th Cir. 1969). Bailey contends that there were no such suspicious circumstances known to Officer Stevens when he decided to have Bailey's car stopped, and that the stop was therefore illegal. We disagree.

█ Officer Stevens knew that a very nervous young man, who he believed to be a minor, had tried to cash a $100 federal tax rebate check in a bar, and, when refused, had left the bar in a hurry, backing his car through a controlled intersection, in violation of traffic regulations. While the record does not support the prosecution's claim that Stevens was justified in having Bailey's car stopped solely because of the traffic violation, this incident emphasized Bailey's desire to make a quick exit from

the area of the Belt Line Bar, adding to the suspicious nature of Bailey's activities. Possession of a $100 government tax rebate check by a man of Bailey's youthful appearance was itself somewhat unusual and reasonably may have warranted investigation, *see United States v. Fallon*, 457 F.2d 15, 18 (10th Cir. 1972). That fact, along with Bailey's nervous demeanor in trying to negotiate the check, Bailey's apparent desire to leave the area as quickly as possible, and the continuing problem with short-change artists in the area, certainly warranted Officer Stevens in directing that Bailey be stopped for some further inquiry. *See Orricer v. Erickson*, 471 F.2d 1204 (8th Cir. 1973); *Carpenter v. Sigler*, 419 F.2d 169 (8th Cir. 1969).

The attempt· by Bailey's companion to conceal the envelope added another crucial fact to the information already possessed by police officer Gabrysh[1] and elevated suspicion to a reasonable belief by the officer that Bailey's car carried a stolen treasury check. *See Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975). These circumstances justified the warrantless seizure of the window envelope, even though no grounds for arrest existed prior to the officer's examination of the check in question, because

> [p]olice officers having probable cause to believe an automobile which they have stopped contains contraband or evidence of a crime may search the vehicle without a warrant. [*Orricer v. Erickson, supra,* 471 F.2d at 1207, *citing Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Thunder Horse v. South Dakota*, 456 F.2d 1262 (8th Cir. 1972).]

## II. *Sentencing.*

█ Before passing sentence upon Bailey, the trial court examined a presentence report which reported that Bailey had been arrested for serious crimes, such as murder

1. Gabrysh testified that after Stevens had positioned his automobile behind that of appellant, he heard a radio transmission that a person in the automobile to be stopped "had attempted to pass a government check or cash it in a local bar."

and armed robbery, for which no prosecutions had been undertaken. Bailey's counsel objected to the inclusion of this information in the report, and Judge Alsop responded that he would not consider these arrests in arriving at a sentence. Bailey now contends that it was impossible for Judge Alsop to wipe evidence of these arrests from his mind. He asserts that the heavy sentence imposed (three years) demonstrates reliance on arrests to support the sentence. Appellant requests vacation of the present sentence and a remand for resentencing.

Bailey's argument is without merit. Judge Alsop said that he would not rely upon the record of arrests which did not ripen into convictions in arriving at an appropriate sentence. We cannot presume that the district judge did otherwise. Bailey shows no basis for complaint regarding the sentencing procedure followed in this case. *See United States v. Pugh*, 509 F.2d 766, 769 (8th Cir. 1975).

We think it well to note that a presentence report need not confine its content only to prior convictions. Rule 32, Fed.R. Crim.P., provides that:

The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court. [Fed.R.Crim.P. 32(c)(2).]

The sentencing judge may look at an arrest record for background information. The sentencing judge, however, must not equate arrests as evidence of prior wrongdoing.

Because the record demonstrates no viable basis to challenge the sentencing procedures, we affirm.