# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3832

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| M.R.M., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 12, 2007
Filed: January 25, 2008

_____

Before LOKEN, Chief Judge, ARNOLD and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

M.R.M. was adjudicated a juvenile delinquent after she admitted committing an assault with a dangerous weapon in Indian Country, in violation of 18 U.S.C. §§ 113(a)(6), 1153, and 5032. The district court[1] ordered her committed to official detention until the age of twenty-one. M.R.M. appeals the disposition, and we affirm.

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

On September 17, 2004, M.R.M, then sixteen years old, was with three female acquaintances when an unknown man assaulted her. Rather than come to M.R.M.'s aid during the assault, her acquaintances left the scene. Three days later, M.R.M. was at a house on the Pine Ridge Indian Reservation when she learned that one of the girls present during the assault was planning to visit. Still angry that the girl had abandoned her when she was attacked, M.R.M. met the girl at the door of the house with a baseball bat in hand. M.R.M. then attacked the girl with the bat, first hitting her in the forehead, and then chasing her out of the house while continuing to hit her until she took refuge in a vehicle. The victim suffered a four-and-a-half inch laceration on her forehead, a fractured hand that required surgery, and numerous bumps and welts on her body.

A two-count information charged M.R.M. under the Federal Juvenile Delinquency Act ("FJDA") with assault resulting in serious bodily injury, and assault with a dangerous weapon. She admitted the latter charge, and at the dispositional hearing, the government recommended that M.R.M. be placed on probation for three years. The district court instead ordered M.R.M. committed to official detention until her twenty-first birthday, which resulted in a term of detention of thirty-four months and twenty days.

We have jurisdiction to review a sentence pronounced under the FJDA to determine whether it was "imposed in violation of law" or is "plainly unreasonable." 18 U.S.C. § 3742(a)(1), (4); *United States v. K.R.A.*, 337 F.3d 970, 978 (8th Cir. 2003). The district court enjoys "broad discretion" when sentencing juvenile offenders under the FJDA, *K.R.A.*, 337 F.3d at 978 – indeed, broader discretion than when sentencing an adult. The advisory sentencing guidelines place an upper limit on the term of official detention that may be imposed, 18 U.S.C. § 5037(c)(1), (c)(2); *United States v. R.L.C.*, 503 U.S. 291, 306-07 (1992), but the sentencing guidelines, even in their advisory capacity, do not apply to juveniles. *Id*. at 307 n.7; USSG § 1B1.12; *see* 28 U.S.C. § 995(a)(19) (providing that the Sentencing Commission

shall have power to "study the feasibility of developing guidelines for the disposition of juvenile delinquents"). Nor does the statute governing juvenile dispositions, 18 U.S.C. § 5037(c), incorporate the adult sentencing factors set forth at 18 U.S.C. § 3553(a). *Cf. United States v. Silva*, 443 F.3d 795, 798-99 (11th Cir. 2006) (explaining that a different section of the FJDA governing juvenile probation orders, 18 U.S.C. § 5037(b), applies 18 U.S.C. § 3565, which in turn directs the court to consider the factors set forth in § 3553(a)); *United States v. A.J.*, 190 F.3d 873, 875 (8th Cir. 1999) (same). Although we have found reference to some of the § 3553(a) factors useful in determining whether a district court permissibly considered certain evidence as relevant in a juvenile proceeding, *United States v. D.A.L.D.*, 469 F.3d 727, 730 (8th Cir. 2006), we have not declared that a district court must balance all of the § 3553(a) factors in making a juvenile disposition. *See id.* (affirming juvenile disposition where "the district court cited only the section 3553(a) factors that it deemed relevant"). To require, for example, that the district court consider the sentencing ranges set forth in the applicable sentencing guidelines would conflict with the decision of Congress to refrain from applying the guidelines to juvenile delinquency proceedings. *Cf. United States v. Hernandez-Martinez*, 485 F.3d 270, 273-74 (5th Cir.) (concluding that "plainly unreasonable" standard of review under 18 U.S.C. § 3742(a)(4) for sentences after revocation of supervised release is not identical to "unreasonableness" standard under *United States v. Booker*, 543 U.S. 220 (2005), for original sentences, in part because Congress provided that only some of the factors set forth in § 3553(a) also apply in revocation proceedings), *cert. denied*, 128 S. Ct. 325 (2007).

M.R.M. relies on the need to avoid unwarranted sentence disparities, 18 U.S.C. § 3553(a)(6), in arguing that the term of official detention ordered by the district court was plainly unreasonable. She contends that this disposition varies from how similarly-situated juveniles have been treated in other reported cases. The court's obligation and capacity to avoid excessive sentence disparities, however, depends on the existence of a benchmark like the advisory guideline range from which to measure

-3-

potential disparities. *United States v. Maloney*, 466 F.3d 663, 668 (8th Cir. 2006). Because there is no such benchmark in juvenile proceedings, and because § 5037(c) does not direct the court to consider § 3553(a)(6) in arriving at a juvenile disposition, we reject M.R.M.'s contention that a particular term of official detention would be "plainly unreasonable" if it caused sentence disparity with other similarly-situated juveniles. Sentence disparities are part and parcel of a dispositional process in which neither Congress nor the Sentencing Commission has elected to provide direction beyond setting an upper limit for a period of official detention. Congress simply has not seen fit to direct that a district court must take into account the decisions of other courts – either through the aggregating work of the Sentencing Commission or by some sort of independent survey – in fashioning a juvenile disposition.[2]

M.R.M. also contends that the district court unreasonably failed to consider whether official detention was the least-restrictive disposition available. She derives this proposed mandate from the Ninth Circuit's decision in *United States v. Juvenile*, 347 F.3d 778 (9th Cir. 2003), which held that "implicit in the structure and purposes of the FJDA" is the requirement that "[y]outh who are adjudged to be delinquent under the FJDA must . . . be confined in the least-restrictive environment that will support their continued rehabilitation." *Id.* at 785-86. We have never adopted the Ninth Circuit's standard, and we decline to do so here. The plain language of the FJDA imposes no least-restrictive disposition requirement, and the structure of the statute is ambiguous at best. Rehabilitation is one purpose of the FJDA, *see* 18 U.S.C.

---

[2]Even assuming sentence disparity was a basis for finding unreasonableness in a juvenile proceeding, the information cited by M.R.M. is insufficient to demonstrate a plainly unreasonable disparity. M.R.M. presents a survey of juvenile cases reported in the federal appellate courts over the last twenty years. We have no information, however, concerning what percentage of the total juvenile dispositions are represented by this survey, or how these examples compare to the dispositions in other cases. In many of the cited cases, moreover, we cannot adequately compare M.R.M. with the juvenile in question without the benefit of a full sentencing record and consideration of the myriad factors that might have influenced the district courts.

§§ 5035, 5039, but it is not the only purpose served by adjudications of juvenile delinquency. While the Supreme Court in *R.L.C.* did not accept the proposition that Congress *entirely* abandoned the rehabilitative model for juveniles in the Sentencing Reform Act of 1984, the Court appeared to recognize that Congress moved away from an exclusive focus on rehabilitation, allowing only that the statute does not "*completely* reject rehabilitative objectives." *R.L.C.*, 503 U.S. at 298-99 (emphasis added). Nothing in the statute precludes the district courts from giving due consideration, for example, to protection of the public or deterrence.

In any event, the district court adequately considered rehabilitation in this case. The court noted that "[t]he purpose of a hearing on a sentencing for a juvenile defendant is to attempt, if possible, to provide some leadership" so that the young person might "straighten around her life." (S. Tr. 12). The court emphasized to M.R.M. that "I don't find any joy in sending an 18-year-old intelligent young lady into federal custody, but what I want is a solution in your life." (*Id.*). After considering the nature of the offense and M.R.M's personal history, the court concluded that detention was necessary so that M.R.M. might "learn to live by the rules." (*Id.* at 14). The court encouraged her to attend counseling while incarcerated so that she could improve her life and eventually "be a credit . . . to [her] community." (*Id.* at 15). The court adequately considered the statutory purpose of rehabilitation and reasonably explained why the chosen disposition would further that purpose.[3]

---

[3]M.R.M. also argues that the court erred by failing to obtain information about the facility at which she would be confined. *Cf. United States v. Patrick V.*, 359 F.3d 3, 13 (1st Cir. 2004). This argument was not raised in the district court, and we find no plain error warranting relief. The parties agreed in post-argument submissions that M.R.M. is detained at the Western South Dakota Juvenile Services Center in Rapid City, and we see no reason to believe that information about the Center would have changed the district court's decision about official detention. *See A.J.*, 190 F.3d at 876.

M.R.M. also argues that the sentence was contrary to law or plainly unreasonable because the district court relied on impermissible factors. M.R.M. did not object at sentencing to any of the statements that she now disputes. As a consequence, the district court had no opportunity to clarify its comments or to correct any potential error in the first instance. Nor was the district court prompted to explain whether the comments had any effect on the ultimate disposition of the case. Accordingly, we review M.R.M.'s complaints about the district court's remarks under a plain error standard. Fed. R. Crim. P. 52(b); *United States v. Lopez-Flores*, 444 F.3d 1218, 1221 (10th Cir. 2006); *United States v. Wiley*, 509 F.3d 474, 479-80 (8th Cir. 2007) (Gruender, J., concurring). To obtain relief, she must show that the district court made an obvious error, that there is a reasonable probability that the error affected the outcome, and that failure to correct the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 732-36 (1993).

One belated objection relates to the district court's comments about M.R.M.'s record of prior arrests during 2003 and 2004 for public intoxication (three times), a curfew violation, disorderly conduct, driving without a permit, and malicious mischief. (PSR ¶ 30). The court stated that while it realized that M.R.M.'s criminal history was "only in category one" under the advisory guidelines, she had sustained "other arrests in Indian Country," and that "arrests do not impact the guidelines, but they do show what kind of person you've been." (S. Tr. 11).

We do not think M.R.M. has established that the district court, in reciting these comments, made a plain error. Congress has provided that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; *see Williams v. New York*, 337 U.S. 241 (1949); *D.A.L.D.*, 469 F.3d at 730 (district court may properly consider "history and characteristics" of defendant, as defined in

§ 3553(a), when determining juvenile disposition). When sentencing an adult, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come," *see United States v. Tucker*, 404 U.S. 443, 446 (1972), and the range of information available for consideration when rendering a juvenile disposition certainly is not any narrower. While the Sentencing Commission has advised that a prior arrest record itself shall not be considered for purposes of an "upward departure" under the guidelines, *see* USSG § 4A1.3(a)(3), the Commission has not seen fit to declare a record of arrests entirely irrelevant to sentencing, *cf. id*. § 5H1.10, and, in any event, neither an advisory guideline range nor an upward departure from it applies in this juvenile case.

M.R.M. argues nonetheless that the district court's decision was "plainly unreasonable," because the court appeared to make an inference about M.R.M.'s character from a series of arrests, none of which led to a conviction. Even in the adult context, there is ambiguity in the law concerning whether a district court may consider a series of arrests as a factor in determining a sentence. We said in *dicta* in *United States v. Bailey*, 547 F.2d 68 (8th Cir. 1976), that a "sentencing judge may look at an arrest record for background information," but "must not equate arrests as evidence of prior wrongdoing." *Id*. at 71. The Seventh Circuit later addressed the matter directly, however, holding that a robbery defendant's arrest record "was within the wide latitude of information the judge can consider when sentencing, especially considering the number of prior arrests dealing with burglary (eight) and theft or robbery (two others)." *United States v. Harty*, 930 F.2d 1257, 1267 (7th Cir. 1991). The First Circuit recently held that a lone arrest is not evidence that the person arrested actually committed any criminal conduct, but was equivocal on the permissibility of drawing an inference about character from a longer record: "*Although a series of past arrests might legitimately suggest a pattern of unlawful behavior even in the absence of any convictions*, [the defendant] was arrested only a single time, more than a decade ago." *United States v. Zapete-Garcia*, 447 F.3d 57,

61 (1st Cir. 2006) (emphasis added). *Cf. Schware v. Board of Examiners*, 353 U.S. 232, 241 (1956) (stating, in a civil context, that the mere fact of an arrest "has very little, if any, probative value in showing that [the] arrestee has engaged in any misconduct").

In a juvenile dispositional hearing, there is arguably a stronger case for permitting a judge to consider a series of prior arrests. While the FJDA does not focus exclusively on rehabilitation, the law presumes that juveniles are amenable to rehabilitation, and a court may have even wider latitude than in an adult sentencing to consider the entirety of a juvenile's background in determining the most appropriate disposition. One state supreme court, for example, has held that juveniles are not entitled to an automatic expunction of their arrest records, because without them, "it is obvious that neither law enforcement nor the juvenile court would ever have a true picture of the developing pattern of any juvenile." *Monroe v. Tielsch*, 525 P.2d 250, 251 (Wash. 1974); *see also P.W.G. v. State*, 682 So.2d 1203, 1208 (Fla. App. 1st Dist. 1996) (sister court's constitutional decision that a prior arrest record may not be considered in juvenile proceeding "resulted from failure to recognize the fundamental differences between the juvenile delinquency and adult criminal systems"), *aff'd*, 702 So.2d 488, 491 (Fla. 1997). Informal dispositions are common in juvenile matters: "Nearly half of all cases referred to juvenile court intake are handled informally." Howard Snyder and Melissa Sickmund, *Juvenile Offenders and Victims: 2006 National Report*, Office of Juvenile Justice and Delinquency Prevention, U.S. Dept. of Justice 104 (2006). Consistent with the national norm, the Oglala Sioux Tribal Code provides that if a juvenile admits the facts of the charged offense, the juvenile court may refer the matter to a counselor or other designated court official, who will informally dispose of the case. Oglala Sioux Tribal Code, Ch. 5, § 5.17 (1996). While it undoubtedly is the better practice for a court to make findings about underlying facts, rather than to rely merely on a series of arrests, the realities of the juvenile justice system lead us to hesitate before declaring that it is obviously wrong

for a judge to infer a troubled past in the case of a juvenile delinquent with a series of past arrests.

In this case, moreover, other undisputed facts tend to support the district court's apparent inference about M.R.M.'s character. For example, in addition to three arrests for public intoxication, it is undisputed that M.R.M. consumed alcohol three to four times per month prior to her incarceration for the instant offense, and that she experienced blackouts, hangovers, physical problems, and loss of control as a result of her alcohol consumption. (PSR ¶ 41). She smoked approximately two "dime bags" of marijuana per day between the ages of 13 and 14, continuing through August 2006. (*Id*. ¶ 42). M.R.M.'s own mother advised the court that prior to the assault that gave rise to these proceedings, M.R.M. "stopped going to school and started drinking and getting into more and more trouble." (Addendum to PSR).

We need not reach a definitive conclusion here about whether a sentencing judge in a juvenile proceeding may properly draw inferences about a juvenile's character from a series of prior arrests alone. It suffices for present purposes to conclude that the district court's comment in this case, viewed in the context of the entire record, did not amount to a plain and obvious error that warrants reversal when the objection is raised for the first time on appeal. *See United States v. Ristine*, 335 F.3d 692, 695 (8th Cir. 2003) (concluding that district court did not commit plain error, despite contrary precedent from another circuit, where "the current law concerning this issue is unsettled").

M.R.M. next objects to the district judge's mention of his own personal experiences with young persons unrelated to the case, citing the judge's statement that he had "buried three young people," and his brief discussion of the circumstances of their deaths. (S. Tr. 12). After these comments, the court warned M.R.M. that "if you keep going . . . the direction that you're going, [your parents] will have to bury you some day." (*Id.* at 13). We interpret these statements to express the court's view that

a period of detention was warranted to teach M.R.M. to "live by the rules" so that she could avoid the negative consequences of future delinquent or criminal acts. This conclusion was based on adequate evidence in the record, and the court's brief personal reference was not improper in the context of a broader discussion tethered to the record.

M.R.M. also directs our attention to the court's statement that "[y]ou got in trouble even though it probably was not your fault, but within a few days after your plea you're back in trouble again. True, you're the victim." (S. Tr. 11-12). Earlier in the hearing, the court asked M.R.M. whether she suffered an assault within three or four days of her plea, in which she lost some teeth or parts of teeth. After M.R.M. gave what the transcript describes as an undefined "indication" in response, the court asked how the assault made her feel, and M.R.M. replied, "Not good. . . . I felt really low inside." (S. Tr. 10). M.R.M. argues that the court improperly blamed her for being the victim of an assault.

We are unsure what the court meant by the cryptic remark that M.R.M. was "in trouble again," because the evidence of record does not provide any further explanation of an assault or altercation that occurred after M.R.M. entered her plea. Whatever its meaning, this brief statement is not plain error that warrants reversal. It is not clear what significance, if any, the court attached to its observation, especially since the court noted that the trouble was "probably not your fault," and that M.R.M. was the victim. And there was ample evidence to support the court's disposition, including the violent nature of the offense, M.R.M.'s history of drug and alcohol use, including a relapse during a previous rehabilitation program, and M.R.M.'s troubled family life.

Given the broad discretion afforded the district courts in the disposition of juvenile adjudications, and the plain error standard applicable to certain of M.R.M.'s objections, we conclude that the period of official detention ordered in this case was

not contrary to law or plainly unreasonable. Accordingly, the judgment of the district court is affirmed. The government's unopposed motion to expand the appellate record is granted.

ARNOLD, Circuit Judge, dissenting.

I would remand this case to the district court for resentencing because I believe that drawing inferences about M.R.M.'s character from her arrest record is contrary to law and plainly unreasonable. The Supreme Court has said that "[t]he mere fact that a man has been arrested has little, if any, probative value in showing that he has engaged in any misconduct. An arrest shows nothing more than that someone probably suspected the person apprehended of an offense." *Schware v. Board of Bar Examiners*, 353 U.S. 232, 241 (1956) (footnote omitted). In other words, an arrest provides an insufficiently reliable basis for concluding that a person has committed illegal conduct. That no doubt is why U.S.S.G. § 4A1.3(a)(3) specifically prohibits courts from considering a prior arrest in determining whether a departure is warranted because of an understatement of a defendant's criminal history. It is noteworthy, too, that this guideline provision contains no exception for a series of arrests, *cf. United States v. Juvenile PWM*, 121 F.3d 382, 384-85 (8th Cir. 1997), and we said years ago in *United States v. Bailey*, 547 F.2d 68, 71 (8th Cir. 1976), that a sentencing judge "must not equate arrests as evidence of prior wrongdoing."

The continuing vitality of this elementary rule, founded on considerations of due process, can hardly be in doubt: Less than two months ago, the Second Circuit held squarely that "a bare-bones indictment, without more, is insufficient to support a factual underpinning for sentencing purposes" and that "a charge ... , standing alone and without independent substantiation, cannot be the basis upon which a criminal punishment is imposed." *United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007); *see also Brothers v. Dowdle*, 817 F.2d 1388, 1390 (9th Cir. 1987).

The proposition that an arrest is an unreliable indication of criminal conduct is therefore so firmly fixed in the case law that the district court was obviously wrong to neglect it in passing sentence on M.R.M. I conclude, moreover, that there is a reasonable probability that the error affected the sentence in this case because the district court told M.R.M. at sentencing that her arrests "show what kind of person you've been." Finally, this is the kind of error that seriously affects the fairness and public reputation of judicial proceedings, *United States v. Olano*, 507 U.S. 725, 736 (1993), because it undermines a bedrock legal principle on which juries in criminal cases are routinely instructed, usually twice, namely that a mere criminal charge is not evidence of guilt and that to give it weight deprives a criminal defendant of the presumption of innocence. *See, e.g.,* Eighth Circuit Model Criminal Jury Instructions §§ 1.01, 3.05. This is a long-established and fundamental rule of law, *see Coffin v. United States*, 156 U.S. 432, 453-56 (1895), and one with which every American citizen is familiar. Failing to give it effect is unfair and bound to erode the public's confidence in the criminal process.

I would therefore remand this case to the district court for resentencing and I respectfully dissent from the court's judgment.

_____