# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1672

_____

United States of America

*Plaintiff - Appellee*

v.

E.T.H., JUV

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Pierre

_____

Submitted: November 19, 2015
Filed: August 18, 2016

_____

Before MURPHY,[1] SMITH, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

E.T.H., who was originally adjudicated a juvenile delinquent for assaulting a federal officer, appeals from the district court's imposition of a combination of

_____

[1]The case was submitted for oral argument to Judges Smith, Bye, and Benton on November 19, 2015. Following Judge Bye's retirement, Chief Judge Riley designated Judge Murphy to sit in place of Judge Bye. *See* 8th Cir. R. 47E.

official detention and juvenile delinquent supervision ("supervision") following revocation of E.T.H.'s prior supervision term. E.T.H. argues that the total combined term of detention and supervision exceeds the maximum possible term under the Federal Juvenile Delinquency Act (FJDA), 18 U.S.C. § 5031 *et seq*. We reverse and remand with instructions to enter a sentence not to exceed the statutory maximum set forth *infra*.

I. *Background*

In 2013, E.T.H. was adjudicated a juvenile delinquent for assaulting a federal officer, in violation of 18 U.S.C. § 111. On September 17, 2013, the district court sentenced then-16-year-old E.T.H. to probation until his 19th birthday: November 21, 2015. The day after his initial sentencing, E.T.H. was placed at McCrossan Boys Ranch in Sioux Falls, South Dakota, but McCrossan Boys Ranch terminated E.T.H.'s participation in its program on May 15, 2014, due to his poor attitude and behavior. He was then transferred to the Juvenile Services Center in Rapid City, South Dakota, where he spent the next two months before returning to his father's residence in Eagle Butte, South Dakota, on July 7, 2014.

Three days later, on July 10, 2014, E.T.H. was arrested for simple assault, resisting arrest, disorderly conduct, and public nuisance. On July 11, 2014, E.T.H.'s probation officer petitioned to revoke E.T.H.'s probation. On September 23, 2014, the district court sentenced E.T.H. to detention until his 18th birthday, followed by two years of supervision. As a result of this sentence, E.T.H. served 4 months and 11 days in detention. His supervision term was scheduled to expire on November 21, 2016.

On E.T.H.'s 18th birthday, he commenced supervision at Glory House in Sioux Falls, South Dakota. On December 12, 2014, E.T.H. produced a urine sample that tested positive for dextromethorphan. On December 19, 2014, the district court held a status hearing on E.T.H. and then returned him to Glory House.

On January 19, 2015, another of E.T.H.'s urine samples tested positive for synthetic cannabinoids. Later that day, E.T.H. removed his electronic ankle monitor, left Glory House without permission, and failed to return. The police located E.T.H. two days later, finding him highly intoxicated at the scene of a car accident. On January 21, 2015, E.T.H.'s probation officer petitioned to revoke E.T.H.'s supervision, alleging that E.T.H. violated the conditions of his supervision by (1) possessing and using a controlled substance, and (2) failing to reside and participate in the residential re-entry center. E.T.H. was arrested on January 26, 2015, and he remained in custody for the pendency of the revocation proceeding.

On February 5, 2015, E.T.H. admitted to the second allegation in the petition. Before the disposition hearing, the probation office prepared a supplemental predisposition investigation report (PIR). Paragraph 14 of the supplemental PIR provided that "[h]ad [E.T.H.] been convicted as an adult, the maximum of the guideline range he could have been sentenced to was 18 months . . . . On a prior revocation, [E.T.H.] served 4 months and 11 days; therefore, the maximum term of official detention is 13 months and 19 days." The government moved for an upward departure and objected to this portion of the PIR at the disposition hearing. The government argued that Eighth Circuit precedent permits a district court to "upwardly depart, following revocation of juvenile probation, based on the juveniles' continued unlawful behavior while on supervision." (Citing *United States v. K.R.A.*, 337 F.3d 970 (8th Cir. 2003); *United States v. A.J.*, 190 F.3d 873 (8th Cir. 1999).) At the disposition hearing, the government maintained that while "a statutory cap" existed, there was "no guideline cap." According to the government, the Guidelines range that E.T.H. would have been subject to had he been convicted as an adult was not a "cap," meaning that the district court could upwardly depart just as it may do so for an adult.

The district court responded by observing that the FJDA "is largely incomprehensible" and "needs to be rewritten" and that the rules concerning juvenile delinquent dispositions are "a bit on the mushy side." The court commented that it is

vested with "a great deal of discretion" in juvenile cases and that "the best interests of the juvenile is a factor for the Court to consider" in determining the appropriate disposition. The court found the government's argument "an interesting point" but declined "to test the outer limits of its authority to sentence this juvenile to prison." The court characterized the question presented as "academic" and refused "to wade in and attempt to . . . resolve that issue."

Thereafter, the court heard argument from the parties on what the proper disposition should be and also engaged in a lengthy discussion with E.T.H. The court gave a thorough recitation of E.T.H.'s history and the case history before announcing its disposition. The court placed E.T.H. in the Reintegrating Youthful Offenders program in Galen, Montana, a place where E.T.H.'s "addiction issues might be addressed and where he can do more for himself than just sitting in a prison setting." "[M]indful of all of the factors in a juvenile delinquent case," the court imposed a disposition of "time served, plus whatever time it takes for placement at the Reintegrating Youthful Offenders program in Galen, Montana, followed by juvenile delinquent supervision for a term of two years on the same terms and conditions, adding the term about the [Reintegrating Youthful Offenders] placement and residential reentry center placement." The court acknowledged that the disposition was "a little bit on the indefinite side because . . . it could take as long as 30 days for . . . him to be actually placed" in the program. As a result, the court "ha[d] to fashion the sentence as time served, plus whatever time it takes for the U.S. Marshal to transport him to Galen, Montana, when they are ready for him there."

E.T.H.'s counsel objected to the disposition, arguing that "the maximum amount that he can be subject to custody and . . . further supervision is . . . 13 months and 19 days, without a finding by the Court of a different number." The court replied that it was "mak[ing] a finding that this juvenile's rehabilitation needs are so vast that additional supervision of two years beyond the point where we are today is required." The court entered a judgment ordering that E.T.H. "be detained for a total term of:

Time served plus any additional time, up to 30 days, that it takes to make arrangements for him to be placed at Reintegrating Youthful Offender's Program in Galen, MT and for the U.S. Marshal to transport him there." The judgment also provided that upon E.T.H.'s release from official detention, he "shall be on juvenile delinquent supervision for a term of: 2 years." This supervision term is the subject of the present appeal.

## II. *Discussion*

On appeal, E.T.H. argues that the total term of detention and supervision that the district court imposed exceeded the maximum possible penalty permitted under 18 U.S.C. § 5037. According to E.T.H., the maximum combined term of official detention and supervision that the district court could impose is 18 months—the top of the advisory Guidelines range applicable to a similarly situated adult defendant—minus the 4 months and 11 days that E.T.H. previously served on official detention.

"We have jurisdiction to review a sentence pronounced under the FJDA to determine whether it was 'imposed in violation of law' or is 'plainly unreasonable.'" *United States v. M.R.M.*, 513 F.3d 866, 868 (8th Cir. 2008) (quoting 18 U.S.C. § 3742(a)(1), (4); *K.R.A.*, 337 F.3d at 978). We have recognized that a "district court enjoys 'broad discretion' when sentencing juvenile offenders under the FJDA—indeed, broader discretion than when sentencing an adult." *Id*. (citation omitted). But we review de novo "the district court's interpretation of the relevant statutes." *K.R.A.*, 337 F.3d at 974 (citation omitted).

The focus of our review is 18 U.S.C. § 5037(d), which governs juvenile dispositions. Subsection (d)(2) sets out the maximum term of supervision that a district court may order as part of its *original* disposition of a juvenile delinquent. It provides:

(2) The term of *juvenile delinquent supervision* that may be ordered for a juvenile found to be a juvenile delinquent may not extend—

> (A) in the case of a juvenile who is less than 18 years old, a term that extends beyond the date when the juvenile becomes 21 years old; or

> (B) in the case of a juvenile who *is between 18 and 21 years old*, a term that extends beyond the maximum term of official detention set forth in section *5037(c)(2) (A) and (B), less the term of official detention ordered*.

(Emphases added.) In turn, § 5037(c)(2) provides that a juvenile delinquent's official-detention term

> may not extend—

> \*\*\*

> (2) in the case of a juvenile who *is between eighteen and twenty-one years old*—

>> (A) who if convicted as an adult would be convicted of a Class A, B, or C felony, beyond the lesser of—

>>> (i) five years; or

>>> (ii) the maximum of the guideline range, pursuant to section 994 of title 28, applicable to an otherwise similarly situated adult defendant unless the court finds an aggravating factor to warrant an upward departure from the

-6-

otherwise applicable guideline range; or

(B) in any other case beyond the lesser of—

(i) three years;

(ii) *the maximum of the guideline range, pursuant to section 994 of title 28, applicable to an otherwise similarly situated adult defendant unless the court finds an aggravating factor to warrant an upward departure from the otherwise applicable guideline range*; or

(iii) the maximum term of imprisonment that would be authorized if the juvenile had been tried and convicted as an adult.

(Emphases added.)

In contrast to § 5037(d)(2), subsections (d)(5) and (6) concern the dispositions available to a district court following *revocation* of a juvenile delinquent's supervision. These subsections provide that a district court may revoke a juvenile's supervision and order a term of official detention, which may be followed by another term of supervision. 18 U.S.C. § 5037(d)(5)–(6); *see also* Joe Gergits, *Looking at the Law*, Fed. Probation, December 2005, at 35, 38–39 ("New subsection 5037(d)(6) permits the court to order a term of juvenile delinquent supervision to follow a term

of detention that was imposed as a result of a violation of supervision."). Subsections (d)(5) and (6) of 18 U.S.C. 5037 provide as follows:

> (5) If the juvenile violates a condition of juvenile delinquent supervision at any time prior to the expiration or termination of the term of supervision, the court may, after a dispositional hearing and after considering any pertinent policy statements promulgated by the Sentencing Commission pursuant to section 994 of title 18, revoke the term of supervision and order a term of official detention. The term of official detention which is authorized upon revocation of juvenile delinquent supervision shall not exceed the term authorized in section 5037(c)(2)(A) and (B), less any term of official detention previously ordered. The application of sections 5037(c)(2)(A) and (B) shall be determined based upon the age of the juvenile at the time of the disposition of the revocation proceeding. If a juvenile is over the age of 21 years old at the time of the revocation proceeding, the mandatory revocation provisions of section 3565(b) are applicable. A disposition of a juvenile who is over the age of 21 years old shall be in accordance with the provisions of section 5037(c)(2), except that in the case of a juvenile who if convicted as an adult would be convicted of a Class A, B, or C felony, no term of official detention may continue beyond the juvenile's 26th birthday, and in any other case, no term of official detention may continue beyond the juvenile's 24th birthday.

> (6) *When a term of juvenile delinquent supervision is revoked and the juvenile is committed to official detention, the court may include a requirement that the juvenile be placed on a term of juvenile delinquent supervision*. Any term of juvenile delinquent supervision ordered following revocation for a juvenile *who is over the age of 21 years old at the time of the revocation proceeding* shall be in accordance with the provisions of section 5037(d)(1), *except* that in the case of a juvenile who if convicted as an adult would be convicted of a Class A, B, or C felony, no term of juvenile delinquent supervision may continue beyond the juvenile's 26th birthday, and *in any other case, no term of juvenile delinquent supervision may continue beyond the juvenile's 24th birthday*.

(Emphases added.) (Footnote omitted.)

"To avoid an inordinate term of juvenile supervision and detention, any combination of supervision and detention, including sanctions following revocation, may not extend beyond the periods available in § 5037." Gergits, *supra*, at 39. Here, both parties agree that § 5037(d)(6) permits a district court to impose an additional term of supervision following revocation. They also agree that the subsection "explicitly sets out the maximum period of supervision for a juvenile who is *over* 21 years old at the time of the revocation proceeding."[2] The source of contention between the parties is what the *maximum term* of additional supervision is for someone who, like E.T.H., is *under* age 21 at the time of revocation. E.T.H. argues that § 5037(d)(6) "is silent on the maximum period of supervision for a juvenile who is *under* 21 years old" at the time of revocation. He contends that because of this silence, a court must look to other subsections in § 5037—specifically, § 5037(d)(2)—to determine the maximum possible term of supervision. He argues that looking to § 5037(d)(2) is consistent with the way that § 5037(d)(5)—the section authorizing *detention* following revocation of supervision—explicitly incorporates § 5037(c)(2)—the section authorizing detention after an original adjudication—to establish the maximum possible term of detention following revocation.

Section 5037(d)(2)(B) provides that the maximum supervision period that a district court may order for a juvenile delinquent is "in the case of a juvenile who *is between 18 and 21 years old,* . . . the maximum term of official detention set forth in section 5037(c)(2) (A) and (B), less the term of official detention ordered." (Emphasis added.) According to E.T.H., § 5037(d)(2)(B) directs that for a juvenile like E.T.H. who is between the ages of 18 and 21 years old, the maximum total period of detention and supervision that the district court may impose upon revocation of a previously imposed term of supervision is one of three options, pursuant to

---

[2]E.T.H. makes this statement in his opening brief, and the government's brief characterizes E.T.H.'s statement as a concession.

§ 5037(c)(2)(B). Those options are (i) three years; (ii) the top of the Guidelines range that would have applied to a similarly situated adult defendant unless the court finds an aggravating factor to warrant an upward departure; or (iii) the maximum term of imprisonment that would be authorized if the juvenile had been tried and convicted as an adult, whichever is least, less any period of official detention previously ordered. Applying this formula, E.T.H. asserts that the top of the Guidelines range that would have applied to a similarly situated adult defendant is 18 months, and the maximum penalty for an adult convicted of assault on a federal officer is eight years; therefore, the lowest of these terms (3 years, 18 months, or 8 years) is 18 months. Taking into account the 4 months and 11 days of official detention previously ordered, E.T.H. concludes that the maximum period of detention and supervision permitted under § 5037(d)(6) via § 5037(d)(2) and § 5037(c)(2)(B) is 13 months and 19 days.

By contrast, the government contends that § 5037(d)(6) alone governs supervision upon revocation, noting that the subsection "does not mention or cross reference § 5037(d)(2)." The government argues that we should "presume that Congress acted intentionally by not including the same maximum boundaries on a revocation supervision term in § 5037(d)(6) as it included in § 5037(d)(2)." According to the government, "[o]ne reasonable reading of the subsection . . . is that § 5037(d)(6) does, in fact, specify a maximum supervision term for someone revoked before age 21" by "mandat[ing] that 'in any other case,' the additional supervision term may not stretch past a juvenile's 24th birthday."

We are now tasked with determining the maximum term of supervision upon revocation for a person under age 21 in the face of an indisputably ambiguous statute. A statute is ambiguous if it is "'capable of being understood in two or more possible senses or ways.'" *See Chickasaw Nation v. United States*, 534 U.S. 84, 90 (2001) (quoting Webster's Ninth New Collegiate Dictionary 77 (1985)). At oral argument, the government characterized the statute as falling within the category of "admittedly

ambiguous statutes" that a court must construe sensibly. It also admitted that § 5037 is "[n]ot a very artfully drafted statute." Likewise, the district court characterized the statute as "largely incomprehensible" and "a bit on the mushy side" that "needs to be rewritten."

When a statute is ambiguous, a court "seek[s] guidance in the statutory structure, relevant legislative history, congressional purposes expressed [in the statute at issue], and general principles [of law relevant to the statute at issue]." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 737 (1985). Our review of the structure and purpose of § 5037 leads us to conclude that we must look to subsection (d)(2) to determine the length of "juvenile delinquent supervision" that a court may order under subsection (d)(6). First, as E.T.H. points out, Congress addressed individuals over 21 years of age *only* in § 5037(d)(5) and (6)—revocation of probation and supervision—because "juveniles over 21 can only come before the court on revocation of probation or supervision. Individuals over 21 cannot receive initial sentences of probation, official detention, or juvenile delinquent supervision because the Juvenile Delinquency Act does not cover individuals charged after the age of 21."[3] This explains why Congress had to set the maximum supervision term out in subsections (d)(5) and (6) for individuals over 21—because they are not discussed (and could not have been included) in any of the other subsections. By contrast, the omission of juveniles between 18 and 21 years old from subsection (d)(6)'s discussion of "juvenile delinquent supervision" is understandable, given that subsection (d)(2) sets the maximum length for any term of "juvenile delinquent supervision" for that age group.

---

[3]The FJDA defines "juvenile" as "a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday." 18 U.S.C. § 5031.

Second, a possibility exists that failure to recognize a maximum penalty for juveniles between 18 and 21 years old could lead to absurd results. "A statute can . . . be considered ambiguous when a particular interpretation from the face of a statute could lead to an anomalous, unusual or absurd result." *Breedlove v. Earthgrains Baking Cos*., 140 F.3d 797, 800 (8th Cir. 1998); *see also Ashley, Drew & N. Ry. v. United Transp. Union*, 625 F.2d 1357, 1365 (8th Cir. 1980) ("[I]t is impermissible to follow a literal reading that engenders absurd consequences where there is an alternative interpretation that reasonably effects the statute's purpose." (citation omitted)); *Friedman v. United States*, 374 F.2d 363, 367 (8th Cir. 1967) ("A literal interpretation of a statute will not be resorted to when it brings about absurd consequences or produces results not intended by Congress." (citation omitted)). As explained *supra*, the goal of § 5037(d)(6) is "[t]o avoid an *inordinate* term of juvenile supervision and detention." Gergits, *supra*, at 39 (emphasis added). As E.T.H. demonstrates, not setting a maximum penalty for juveniles under age 21 would mean that

> a person who was 20 years and 364 days old on the day of the revocation hearing would be subject to an unlimited term of supervision while a person who was two days older (*i.e.*, 21 years and 1 day), could only be placed on supervision until his 24th or 26th birthday, depending on the underlying offense.

Third, the government's argument that subsection (d)(6) specifies the maximum term of post-revocation supervision for a juvenile under 21 years old as his 24th birthday is not consistent with the canons of statutory construction. Under the last antecedent rule, "[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent." 2A Norman J. Singer & Shambie Singer, Sutherland Statutes and Statutory Construction § 47:33 (7th ed. 2007) (footnote omitted). "The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." *Id*. (quotation and footnote omitted). As a result, "a proviso usually applies to the

-12-

provision or clause immediately preceding it." *Id*. (footnote omitted). "While [the last antecedent rule] is not an absolute and can assuredly be overcome by other indicia of meaning . . . construing a statute in accord with the rule is quite sensible as a matter of grammar." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (quotation and citation omitted).

Here, § 5037(d)(6) provides that

> [a]ny term of juvenile delinquent supervision ordered following revocation for a juvenile who is over the age of 21 years old at the time of the revocation proceeding shall be in accordance with the provisions of section 5037(d)(1),[4] *except* that in the case of a juvenile who if convicted as an adult would be convicted of a Class A, B, or C felony, no term of juvenile delinquent supervision may continue beyond the juvenile's 26th birthday, and in any other case, no term of juvenile delinquent supervision may continue beyond the juvenile's 24th birthday.

(Emphasis added.) Applying the last antecedent rule, the "except" clause of § 5037(d)(6) *does* hang on the sentence that begins "[a]ny term of juvenile delinquent supervision ordered following revocation for a juvenile who is over the age of 21 years old at the time of the revocation proceeding." In other words, "juvenile who is over the age of 21 years old at the time of the revocation proceeding" is the subject of the sentence, and "except in any other cases" modifies that antecedent clause. As a result, the subsection's statement that "no term of juvenile delinquent supervision may continue beyond the juvenile's 24th birthday" refers to juveniles over 21 years old at the time of revocation.

---

[4]Subsection (d)(1) is no aid in determining Congress's statutory intent in subsection (d)(6). It merely provides that "[t]he court, in ordering a term of official detention, may include the requirement that the juvenile be placed on a term of juvenile delinquent supervision after official detention." 18 U.S.C. § 5037(d)(1).

Having determined that we must look to subsection (d)(2) to determine the length of a "juvenile delinquent supervision" term that a court may order under subsection (d)(6), we must now consider whether for the purposes of subsection (d)(2), the court must use the juvenile's age *at the date of the revocation hearing* in ordering supervision under subsection (d)(6), or instead his age *at the date of the initial disposition hearing*. We conclude that a court must use the juvenile's age at the date of the revocation hearing. First, both subparts of subsection (d)(2) refer to the age of the juvenile using the present tense: "a juvenile who *is* less than 18 years old" or "a juvenile who *is* between 18 and 21 years old." 18 U.S.C. § 5037(d)(2)(A)–(B) (emphases added). Congress's use of the present tense suggests that a court must apply the juvenile's age at the time of the hearing at which the court refers to subsection (d)(2). *See United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress'[s] use of a verb tense is significant in construing statutes." (citations omitted)).

Second, using the juvenile's age at the time of the initial disposition hearing would create an inconsistency. The court would first ask whether the juvenile "is over [21] at the time of the revocation proceeding" under subsection (d)(6) and answer using the juvenile's present age. If the juvenile is under 21, the court would then ask whether the he "is less than 18" or "is between 18 and 21" under subsection (d)(2) and would answer based on whether he was under 18 at the time of the initial disposition. No command or other textual indication in § 5037(d) counsels that the court make such an awkward switch.

For the aforementioned reasons, we hold that the maximum term of supervision that a court may impose under § 5037(d)(6) is determined by the requirements in § 5037(d)(2), using the juvenile's age at the time of the revocation hearing. As a result, the maximum *total* period of detention and supervision that may be imposed upon revocation of a previously imposed term of supervision for a juvenile who is under age 21 at the time of revocation is (i) 3 years, (ii) the top of the Guidelines

-14-

range that would have applied to a similarly situated adult defendant *unless the court finds an aggravating factor to warrant an upward departure*, or (iii) the maximum term of imprisonment that would be authorized if the juvenile had been tried and convicted as an adult, whichever is least, *see* 18 U.S.C. § 5037(c)(2)(B), "less the term of official detention ordered." *Id*. § 5037(d)(2)(B).

Applying this formula to the present case, E.T.H. is correct that 18 months—the top of the Guidelines range that would have applied to a similarly situated adult and the lowest term under § 5037(c)(2)(B)—is the starting point from which the court must calculate the maximum total period of detention and supervision that it could impose upon E.T.H. However, E.T.H. is incorrect that the court must subtract from this number the 4 months and 11 days of official detention *previously* ordered. Under § 5037(d)(2), the maximum supervision term is reduced by "the term of official detention ordered." That phrase refers to "the term . . . ordered" at the *instant* hearing, not to a term of detention *previously* ordered. This is in contrast to the reduction in the maximum term of detention under § 5037(d)(5), which is the maximum from § 5037(c)(2) "less any term of official detention previously ordered."

Here, the district court ordered up to 1 month of detention, and, according to the government, E.T.H. served 28 days. *See* Gov't Br. 6 n.3. The maximum supervision term under § 5037(d)(6) and (d)(2)(B) is calculated by subtracting the term of detention ordered, 1 month, from the 18-month maximum detention from § 5037(c)(2), yielding a maximum of 17 months.

The government argues that even if we adopt E.T.H.'s construction of § 5037(d)(6), any error on the part of the district court is harmless. It points to E.T.H.'s concession that "had the district court found 'an aggravating factor to warrant an upward departure,' there would be no basis for appeal here." The government argues that any error is harmless because the district court made a finding, in response to defense counsel's objection to the disposition, that E.T.H.'s "rehabilitation needs

-15-

are so vast that additional supervision of two years beyond the point where we are today is required." The government contends that any remand would "require the district court to engage in a rote recitation of sentencing factors, guidelines considerations, then state that there are aggravating factors warranting an upward departure."

Our holding specifies that the top of the Guidelines range that would have applied to a similarly situated adult defendant is the maximum total period of detention and supervision that may be imposed upon revocation of a previously imposed term of supervision for a juvenile who is under age 21 at the time of revocation *unless the court finds an aggravating factor to warrant an upward departure*. At oral argument, the court inquired whether it was "undisputed that the district court did not grant [the government's] motion for upward departure," and the government responded, "That's right. Well, didn't grant our motion for an upward departure for a lengthy detention sentence . . . ." Although the government would have us construe the district court's response to defense counsel's objection as the equivalent of an upward departure, we decline to do so. The record shows that the district court denied the government's motion for an upward departure and never again revisited the subject.

### III. *Conclusion*

Accordingly, we reverse the judgment of the district court and remand with instructions to enter a sentence not to exceed the statutory maximum set forth *supra*.

———————————————